Marion PETERSON, Respondent,

v.

**CITY OF INVER GROVE HEIGHTS,**
**Appellant.**

No. C4–83–1408.

Court of Appeals of Minnesota.

March 14, 1984.

Timothy J. Kuntz, Daniel J. Beeson, So. St. Paul, for appellant.

Frank E. Villaume, III, St. Paul, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

FOLEY, Judge.

This is an appeal by the City of Inver Grove Heights ("City") from the order of the district court, dated March 29, 1983. The order reduced the amount the Peterson property had been assessed for construction of a new public road known as Ann Marie Trail. The City appeals the district court's assertion of jurisdiction as well as the determinations that the assessment exceeded the benefits conferred and violated the uniformity clause of the Minnesota Constitution.

We reverse.

## FACTS

On August 22, 1963, respondent Marion Peterson and her late husband purchased 6.2 acres of land in Inver Grove Heights. The property is a rolling, wooded site with a small, swampish, wildlife area. The Petersons built a rustic rambler on the property and moved in during 1965.

The warranty deed to the Peterson property included an easement over an earthen access road. The access road was about 15 feet wide and was in existence in 1963. The Lentzes and the Fosters, neighbors of the Petersons, also used the road. The Petersons maintained the road themselves and were able to get to and from the home year round. Neither the Petersons nor their neighbors ever petitioned for a public road.

In the late 1970's, a large tract of land adjoining the Foster, Lentz and Peterson properties was purchased for development. A preliminary plat was filed with the City and a public hearing was scheduled for October 2, 1979. Respondent is not sure whether she attended that hearing. She did receive notice that the City was considering constructing a bituminous road, however, and she attended half a dozen council meetings in response to the notice. Although she never spoke at any of these council meetings, she came away with the impression that her property would not be assessed for construction of the new road.

The plat adopted for the subdivision contained a right of way from the subdivision to Highway 3. The right of way is basically 60 feet, but it does vary. The most obvious deviation in the right of way path is at respondent's property. By virtue of the triangular shaped deviation, respondent's property abuts the right of way for approximately 17 feet.

On June 2, 1982, the City mailed a notice of assessment hearing. The notice specifically provided: "The improvements are proposed to be assessed on an area or frontage basis against properties abutting or tributary to said improvements. The areas, as specifically described therein, are subject to said assessments." Respondent received the notice and read it. Since the southern border of her property is about two car lengths from the surface of the new road, she concluded the assessment did not apply to her property. She made no attempt, however, to contact the City and verify her conclusion.

The assessment hearing was held on June 21, 1982, as scheduled. Respondent did not appear at the hearing and did not file a written objection. She first learned of the assessment about June 28, 1982, when she received the notice of assessment. Respondent called the notice's signatory and complained about the amount of the assessment.

The total cost of constructing the new road was $194,000.00. The cost was assessed among the 18 lots of the Vali-Hi subdivision and the three adjoining properties. The Lentz and Foster properties, both zoned E-1 or estate with minimum two and one-half acres, were determined capable of subdivision and so assessed on a front footage basis. The respondent's property, also zoned E-1, was considered incapable of subdivision. Since that was also true of the Vali-Hi lots, respondent was assessed for the average front footage of the subdivision lots. The 18 lots of the subdivision, all zoned E-2 or estate with minimum one and three-quarters acres, were assessed an equal share of the remaining construction cost because all were

previously land-locked and each has one access to the new road. The following chart summarizes the assessments levied:

| Property | Zoning Classification | Actual Front Footage | Assessment |
|---|---|---|---|
| Peterson | E–1 | 17 | $ 8,449.78 |
| Foster | E–1 | 662.79 | 19,267.36 |
| Lentz | E–1 | 496.87 | 14,443.98 |
| Vali-Hi Subd. | E–2 | Varies | 8,451.18 |

Respondent appealed the assessment to the Dakota County district court. The trial court found that the notice of assessment hearing was not reasonably calculated to inform respondent that her property would be assessed; that the assessment on respondent's property exceeded the benefits conferred by construction of the public road; and that assessment of respondent's property on an "average per lot" basis rather than the "front foot" basis used to assess the other properties zoned E–1 resulted in an unlawful, non-uniform assessment on property of the same class. Thereafter, the court directed recalculation of the assessment on respondent's property under a "front foot" basis. The trial court specifically found that a portion of the Peterson land did abut the new road.

### ISSUES

1. Whether respondent's personal belief that the assessment notice she received did not apply to her property constitutes "reasonable cause" for failing to timely object to the assessment?

2. Whether the assessment on respondent's property exceeds the benefits conferred by construction of the public road?

3. Whether the assessment levied by the City violates the uniformity clause of the Minnesota Constitution, Article X § 1?

### ANALYSIS

Minn.Stat. § 429.081 (1982) enumerates the circumstances under which a property owner can appeal an assessment. The statute provides:

Within 30 days after the adoption of the assessment, any person aggrieved, who is not precluded by failure to object prior to or at the assessment hearing, or whose failure to so object is due to a reasonable cause, may appeal to the district court by serving a notice upon the mayor or clerk of the municipality.

*Id.* These limitations on the right to appeal flow from Minn.Stat. § 429.061 (1982), which provides in part that: "[a]ll objections to the assessments not received at the assessment hearing in the manner prescribed by this section are waived, unless the failure to object at the assessment hearing is due to a reasonable cause." Minn.Stat. § 429.061, subd. (2) (1982).

In *City of Chisago City v. Poulter*, 342 N.W.2d 167 (Minn.App.1984), we held that nonreceipt of the written notice of assessment hearing was reasonable cause for failing to timely object. Here respondent received and read the notice of assessment hearing approximately two weeks before the hearing. Her personal belief that the assessment did not apply to her property is the reasonable cause she asserts.

Respondent did attend six City council meetings involving the Vali-Hi subdivision and the new road. On no occasion, however, did she participate in the meeting. Her mistaken impression that the assessment would not apply to her land could have been corrected by addressing a single question to the council. A person exercising ordinary business care and prudence would have asked about the applicability of the assessment to her property.

The alleged ambiguities in the notice of assessment hearing would also have been resolved by a simple inquiry. Respondent received the notice approximately two weeks before the hearing date. The notice was addressed "to whom it may concern" and it did list sixteen different projects to be considered. The notice also states, however, that the "proposed assessments are on file for public inspection at the Clerk's Office, 8650 Courthouse Boulevard" and contained the substance of Minn.Stat. §§ 429.061, subd. 2 and 429.081 quoted above. To reiterate, a simple phone call to the clerk's office would have revealed the applicability of the assessment to respondent's property.

With respect to the council meetings, we do observe that the minutes of the March 3, 1980 council meeting indicate the developers' attorney advised the council that his clients had reached an understanding regarding bearing the entire cost of the assessment and that there was no objection to the project from the neighbors. However, no claim of either fraud or misrepresentation was raised as an issue in this case. It is unfortunate that the council did not take this commitment into consideration in the preparation of the assessment roll; that the developers were not joined in the action; and that the issue was not pursued at trial by the appellant.

■ Minn.Stat. §§ 429.061, subd. 2 and 429.081 are not ambiguous. They require timely written objections or a reasonable cause for failing to so object to preserve the right to appeal. The clear objective of the statutes was to improve the assessment process by promoting participation in the process and to insure a degree of finality. Permitting a judicial appeal based on the property owner's subjective belief is inconsistent with both of these objectives.

■ It is also inconsistent with our rules of statutory construction which provide:

> The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. *Every law shall be construed, if possible, to give effect to all its provisions.*

> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1982) (emphasis added); *see also State v. United States Fidelity and Guaranty Company*, 303 Minn. 131, 133, 226 N.W.2d 322, 323–24 (1975). In order for the requirement to file timely objections to have any effect, the reasonable cause exception must require objective reasons for failing to file. Otherwise the statutory exception would swallow the general rule requiring timely written objections to preserve a right of appeal.

■ Having concluded that Minn.Stat. § 429.081 (1982) precluded respondent's appeal, we need not address the other issues raised. We note, however, that the trial court's failure to make findings on the before and after market value of respondent's property would have been a separate and sufficient ground for reversing and remanding this case. *See In Re Village of Burnsville*, 310 Minn. 32, 245 N.W.2d 445, 450 (Minn.1976); *Gibbish v. Village of Burnsville*, 294 Minn. 318, 322–23, 200 N.W.2d 310, 314 (1972).

Finally, although we are upholding this assessment because the City council has followed the present statute, we are troubled by the statute as it reads and invite the legislature to review the notice requirements concerning assessments so that property owners will have a clearer picture of what is involved in the proposed assessment. We are primarily troubled by the fact that in the notice a dollar figure of the proposed assessment is not set out against a particular described property.

### DECISION

The trial court's order of March 29, 1983 is reversed. The case is remanded to the trial court for dismissal.

**Reversed and remanded.**